UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID CALDWELL,

                                 Plaintiff,

   v.                                                                       9:19-CV-673
                                                                                      (TJM/ATB)

C.O. KUSMINSKY, et al.,

                                 Defendants.

---

DAVID CALDWELL, Plaintiff, pro se
BRIAN W. MATULA, Asst. Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, United States Senior District Judge. Presently before the court is defendant Corrections Officer ("C.O.") Kusminsky's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 14). For the reasons set forth below, this court will recommend denying defendant's motion, without prejudice.

**I.    Background**

    **A.    Procedural History**

Plaintiff David Caldwell, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* 42 U.S.C. § 1983 action on May 22, 2019, in the United States District Court for the Southern District of New York. (Complaint ("Compl.")) (Dkt. No. 1). In May 2019, Chief District Judge Colleen McMahon entered an order transferring plaintiff's

action to the Northern District of New York, where venue was proper. (Dkt. No. 3).

Pursuant to Judge McMahon's order, plaintiff's case was transferred to this court. Plaintiff then moved for leave to proceed in forma pauperis ("IFP"), and Judge McAvoy reviewed the complaint pursuant to 28 U.S.C. §§ 1915, 1915A. (Dkt. Nos. 6, 8). Pursuant to Judge McAvoy's July 2, 2019 order, plaintiff's Eighth Amendment excessive force claim against defendant C.O. Kusminsky ("defendant" or "C.O. Kusminsky") survived initial review, and summons was issued as to him. (Dkt. Nos. 8, 9, 12).

In lieu of answering the complaint, C.O. Kusminsky filed the instant summary judgment motion on September 6, 2019. (Dkt. No. 14). Defendant seeks summary judgment on the basis that plaintiff purportedly failed to exhaust his administrative remedies. (*Id.*). Plaintiff responded to the motion on October 10, 2019 (Dkt. No. 20), and defendant replied on October 31, 2019. (Dkt. No. 21).

**B.   Facts and Contentions**

At all relevant times, plaintiff was an inmate incarcerated in the "JSU"[1] at Coxsackie Correctional Facility ("C.F."). The complaint alleges that at approximately 10:00 a.m. on November 1, 2016, C.O. Kusminsky and two other, unidentified corrections officers removed plaintiff from his cell in order to conduct a cell search. (Compl. at 3). Plaintiff states that after the search, C.O. Kusminsky "brought out a

---

[1] "The 'JSU' is a[n] adolescent SHU [Special Housing Unit] that houses 16 and 17 year olds [sic] with SHU time." (Compl. at 3).

couple pieces of paper which held [his] raps on [sic] and a couple of food items." (*Id.*). Plaintiff "engaged in a conversation with [C.O.] Kusminsky" regarding the basis for removing plaintiff's property, and debated with him as to whether the confiscated raps constituted gang material. (*Id.*).

Consequently, C.O. Kusminsky announced that plaintiff was resisting. (*Id.*). Plaintiff disputes that he was resisting, however admits that once the officers grabbed him "for no reason," he "started resisting." (*Id.*). The officers proceeded to use physical force on plaintiff, and plaintiff alleges that C.O. Kusminsky "punched" him in the face. (*Id.*). Plaintiff also maintains that C.O. Kusminsky performed an improper "tactical leg grab." (*Id.*). Plaintiff claims to have suffered a swollen left jaw and "busted" eyebrow as a result of the alleged assault. (*Id.*). He seeks monetary relief in the amount of $100,000.00, for physical and emotional damages. (*Id.*).

## II.  Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a

motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004),

abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a

grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in

*Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

### B.  Application

C.O. Kusminsky moves for summary judgment on the basis that plaintiff failed to exhaust his administrative remedies. In support of his motion defendant relies, in part, on the allegations in plaintiff's complaint. Specifically, defendant points to the portion of the complaint where plaintiff represents, in check-box form, that (1) Coxsackie C.F. has a grievance procedure, and (2) plaintiff did not file a grievance at Coxsackie C.F., or any other facility, regarding the November 1, 2016 incident. (Compl. at 4).

In further support of his motion, defendant relies on the declaration of Jeffery A. Hale, the Inmate Grievance Program Supervisor ("IGPS") at Coxsackie C.F. (Hale Declaration at ¶ 1) (Dkt. No. 14-3). According to IGPS Hale, Coxsackie C.F. has a "fully functional IGP by which inmates can file grievances. At Coxsackie [C.F.], NYCRR Title 7 and Directive #4040 are available at the facility's law library." (*Id.* at ¶ 5). IGPS Hale also states that, based on his review of the relevant records, plaintiff did not file any grievances related to the November 1, 2016 incident. (*Id.* at ¶ 14). In fact, plaintiff did not submit any grievances while incarcerated at Coxsackie C.F. (*Id.* at ¶

15).

Defendant has also submitted the declaration of Rachael Seguin, the Assistant Director of the Inmate Grievance Program for DOCCS. (Sequin Declaration at ¶ 1) (Dkt. No. 14-4). Assistant Director Seguin is the custodian of the records maintained by CORC. (*Id.* at ¶ 13). According to her records, plaintiff did not pursue a grievance appeal to CORC regarding the underlying assault, or any other complaint, at any time while in DOCCS custody. (*Id.* at ¶¶ 16-17).

In response to defendant's motion, plaintiff submits a one-page letter generally disputing that he failed to exhaust available administrative remedies for the alleged assault. (Dkt. No. 20). According to his submission, plaintiff was 17-years-old and confined to a juvenile special housing unit at Coxsackie C.F. when the underlying incident occurred. (*Id.*). Plaintiff also states that, at the time, he was "never" informed that Coxsackie C.F. had a grievance procedure, nor did he ever receive a handbook or pamphlet explaining "anything." (*Id.*). At some point after the alleged assault, plaintiff was transferred out of Coxsackie C.F. When he returned to the facility two years later, in November 2018, he was "informed about the grievance procedure." (*Id.*). Thus, when plaintiff filed his complaint in May 2019, he answered "Yes" as to whether Coxsackie C.F. had a grievance procedure, based on his contemporaneous knowledge. (*Id.*). However, plaintiff insists that he was never informed of the Coxsackie C.F. grievance procedure at any relevant time surrounding the alleged assault, but that he

was "young and naive and didn't know nothing [sic] about [his] prisoners rights . . . [and] they took advantage of that fact by not allowing me to know anything." (*Id.*). Plaintiff also maintains that he notified the tier hearing officer about the alleged assault at the disciplinary hearing stemming from the underlying incident. (*Id.*).

Initially, defendant argues that plaintiff's letter submission should be disregarded as an unsworn opposition statement, and that the court should accept, as undisputed, defendant's Statement of Material Facts. Admittedly, plaintiff failed to file a proper response to the defendant's Statement of Material Facts, as required by Local Rule 7.1(a)(3). However, "[w]here the party opposing summary judgment is proceeding *pro se,* the court must read his opposition papers "liberally and interpret them to raise the strongest arguments that they suggest." *Rodriguez v. C.O. Reppert*, No. 14-CV-671, 2016 WL 11483439, at *2 (W.D.N.Y. Sept. 28, 2016) (quoting *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012)); *see also Cucchiara v. Dumont*, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *3 (N.D.N.Y. Apr. 26, 2019), report and recommendation adopted, 2019 WL 2514234 (N.D.N.Y. June 18, 2019) ("Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," *pro se* plaintiffs are afforded special solicitude in this District and within the Second Circuit."); *James v. Mosko*, No. 13-CV-5, 2016 WL 8671478, at *6 n. 5 (W.D.N.Y. July 22, 2016), report and recommendation adopted, 2017 WL 397474 (W.D.N.Y. Jan. 30, 2017) (citing

9

*Walker v. Schult,* 717 F.3d 119, 122 n.1 (2d Cir. 2013)). Thus, even in the complete absence of a response from the plaintiff, defendant is entitled to judgment "only if the material facts demonstrate his entitlement to judgment as a matter of law." *Cucciara v. Dumont*, 2019 WL 2516605 at *3 (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

Considering the above, plaintiff's allegations raise questions that cannot be answered based on the presently undeveloped record. *See Gaines v. Armor Health Care, Inc.*, No. 12-5663, 2013 WL 6410311, at *3 (E.D.N.Y. Dec. 9, 2013) ("[I]nquiries regarding exhaustion and excuse typically cannot be determined on an undeveloped record."). "Although a motion for summary judgment may be filed at any time until 30 days after the close of all discovery, summary judgment is generally not appropriate until after some discovery has occurred." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322 (holding that Fed. R. Civ. P. 56 allows for the entry of judgment against a party who, "after adequate time for discovery," has failed to establish the existence of a genuine dispute as to an essential element of that party's case). In certain, limited circumstances, a motion for summary judgment in lieu of an answer and prior to discovery may be appropriate,[2] however for the reasons set forth below, that is not the case here. *See e.g. Houston v. Sheahan*, No. 13-CV-6594, 2016

---

[2] *See Parra v. Wright*, No. 11-CV-6270, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013) (considering one portion of the defendants' motion for summary judgment because "the facts regarding Plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome of that portion of the application").

WL 554849, at *2 (W.D.N.Y. Feb. 10, 2016). Indeed, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.* (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)); *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment.").

     Moreover, failure to exhaust is an affirmative defense, and inmates are not required to demonstrate exhaustion in their complaints. *See Porter v. Uhler*, No. 9:17-CV-0047 (MAD/TWD), 2019 WL 2479000, at *13 (N.D.N.Y. Feb. 19, 2019), report and recommendation adopted, 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019) (citing *Jones*, 549 U.S at 216); *see also V.W. by & through Williams v. Conway,* 236 F. Supp. 3d 554, 585 (N.D.N.Y. 2017) ("Of course, failure to exhaust is an affirmative defense and therefore inmates are not required to specifically plead or demonstrate exhaustion in their complaints.") (internal quotations omitted). Thus, at this juncture defendant bears the burden of proving that plaintiff failed to exhaust his administrative remedies, then the burden shifts to plaintiff, who must demonstrate that the DOCCS IGP was unavailable to him under *Ross. See Porter v. Uhler*, 2019 WL 2479000, at *13. Here, defendant has met his initial burden of showing that plaintiff failed to satisfy the exhaustion requirements, as it is undisputed that plaintiff never filed a grievance regarding the alleged assault.

11

The remaining question is whether plaintiff has sufficiently demonstrated that administrative remedies were not available to him during the relevant time period. Because defendant filed his motion in lieu of answering the complaint, neither side has had an opportunity to take discovery. This is problematic for both parties. First, the absence of discovery is "highly prejudicial" to the plaintiff, because the defendant's exhaustion defense relies on evidence outside the four corners of the complaint, including testimony and documentation submitted by DOCCS officials with access to facility grievance records. *James v. Mosko*, 2016 WL 8671478, at *4. Thus, plaintiff has not been able to challenge these representations, nor has he had the opportunity to request documents or other evidence to support his contention that the grievance procedure at Coxsackie C.F. was not made "available" to him. (*Id.*). Moreover, defendant derives no benefit from hastily seeking summary judgment. Instead, the lack of discovery and incomplete record leaves this court with many unanswered questions, information which could have, potentially, justified dismissal on the basis of exhaustion.

As previously discussed, the *Ross* court did away with the "special circumstances" exception to an inmate's duty to exhaust his administrative remedies. Instead, "an inmate's obligation to exhaust hinges on the 'availab[ility]'[3] of

---

[3]"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' [S]ee also Random House Dictionary of the English Language 142 (2d ed. 1987) ('suitable or ready for use'); 1 Oxford English Dictionary 812 (2d ed. 1989) ('capable of being made use of, at one's

administrative remedies." *Ross*, __ U.S. at __, 136 S. Ct. at 1858. The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

 The *Ross* court identified these three circumstances as relevant to the case before them, however cautioned that "courts in . . . other cases must apply [the availability standard] to the real-world workings of prison grievance systems." *Ross*, __ U.S. at __, 136 S. Ct. at 1859. In *Williams v. Corr. Officer Priatno,* 829 F. 3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit acknowledged that "the three circumstances discussed in *Ross* do not appear to be exhaustive, given the Court's focus on three kinds of cirucumstances that were 'relevant' to the facts of that case." The *Williams* court explicitly refrained from opining on "what other circumstances might render an

---

disposal, within one's reach'); Black's Law Dictionary 135 (6th ed. 1990) ('useable'; 'present or ready for immediate use'). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, __ U.S. at __, 136 S. Ct. at 1858–59 (internal citations and quotations omitted).

otherwise available administrative remedy actually incapable of use." *Id.*

Since *Ross* and *Williams* were decided, the district courts in this Circuit have grappled with what circumstances would render administrative remedies unavailable to an inmate who alleges he was unaware of the grievance process. It is well settled that, post-*Ross*, a plaintiff must show more than mere unawareness of an existing grievance procedure; "he must show that he was unaware because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.' " *Grant v. Kopp,* No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *7 (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (citations omitted); *see also Porter v. Uhler,* 2019 WL 2479000, at *14. Although the Second Circuit has not specifically foreclosed "unawareness" as a basis for unavailability, the majority of district court cases have rejected this theory based on other facts in the record. *See, e.g.*, *Briscoe v. D'Agata,* No. 14-CV-7384, 2016 WL 3582121 (S.D.N.Y. June 28, 2016) (no exception where plaintiff, who claimed he was unaware of the grievance procedure, received, signed for, and was familiar with the rule book containing the grievance procedure, and admitted that no one prevented him from reading the rule book, stopped him from filing a grievance, or refused to give him a grievance form) (listing cases); *Richardson v. Jakubowski,* No. 16-CV-6038, 2019 WL 4674199 (W.D.N.Y. Sept. 25, 2019) (rejecting plaintiff's contention that administrative

remedies were unavailable to him because he was not properly advised of the process of filing a grievance, since he had received information on how to file a grievance at the correctional facility where he was previously housed); *Nickelson v. Annucci*, No. 9:15-CV-227 (GTS/TWD), 2018 WL 7269856 (N.D.N.Y. Nov. 21, 2018), report and recommendation adopted, 2019 WL 396003 (N.D.N.Y. Jan. 31, 2019) (administrative remedies not unavailable where plaintiff pursued prior grievances, thereby demonstrating his awareness of the grievance procedures).

Notwithstanding, pre-*Ross* decisions from this district suggest that age is a factor that may be considered in determining whether an inmate-plaintiff's failure to exhaust is excused by reason of unavailability. *See Lewis v. Mollete*, 752 F. Supp. 2d 233, 241 (N.D.N.Y. 2010) ("[Plaintiff's] age at the time of the incident and his contention that he was never informed of the grievance procedure . . . also weigh in favor of concluding that grievance processes were "unavailable" to plaintiff."); *Molina v. New York*, No. 1:09-CV-467 (MAD/ATB), 2011 WL 6010907, at *4 (N.D.N.Y. Dec. 1, 2011) ("The age of the prisoner and their familiarity with the grievance procedure are relevant in determining whether the grievance process was available to the prisoner."). Although *Ross* curtailed this inquiry to some extent, the effect of an inmate-plaintiff's mental capacity, presumably influenced by, among other things, his age, remains a potentially relevant factor when considering the availability of administrative remedies. *See Osborn v. Williams,* 792 F. App'x 88, 90 (2d Cir. 2019) ("Whether mental illness can

render an administrative remedy unavailable under *Ross* is an open question in this Circuit. Even assuming without deciding, however, that an inmate's mental illness can obviate his obligation to exhaust administrative remedies, we are not persuaded that administrative remedies were unavailable to [plaintiff] here.").

The question presently before this court is whether administrative remedies were available to a juvenile inmate who claims that he was unaware of the grievance procedure at the correctional facility where the underlying incident occurred. At this juncture, defendant has failed to present any evidence compelling a determination that plaintiff's remedies were "available," such as evidence that plaintiff received a rule book or any other resource identifying the grievance procedure at Coxsackie C.F.; attended some form of orientation at Coxsackie C.F., at which the grievance procedure was identified; or filed any grievances prior to the alleged occurrence. Indeed, the prematurity of the defendant's motion has left many questions unanswered. Information developed through discovery may have guided this court's determination, e.g., as to whether plaintiff was previously incarcerated at any other DOCCS facilities before the underlying incident, or in what way the officers at Coxsackie C.F. "took advantage of [plaintiff's age and naivety] by not allowing [him] to know anything" regarding the grievance process. (Dkt. No. 20).

Defendant's premature motion for summary judgment presents the risk of having the exhaustion question decided on an incomplete or inaccurate record, and furthermore

16

this court has "concerns about granting summary judgment against a [*pro se*] plaintiff who has not had the opportunity to fully present [his] side of the story." *James v. Mosko,* 2016 WL 8671478 at *5. Accordingly, and for the reasons set forth above, it is recommended that defendant's motion for summary judgment be denied without prejudice. Defendant may renew his summary judgment motion at a later date, presumably after an opportunity for some meaningful discovery.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendant C.O. Kusminsky's motion for summary judgment (Dkt. No. 14) be **DENIED, WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 1, 2020

_____
Andrew T. Baxter
U.S. Magistrate Judge