## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DAVID CALDWELL,

                                        Plaintiff,

            v.                                          9:19-CV-673
                                                        (TJM/ATB)
C.O. KUSMINSKY, et al.,

                                        Defendants.

DAVID CALDWELL, Plaintiff, pro se
BRIAN W. MATULA, Asst. Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, United States Senior District Judge.  Presently before the court is defendant Corrections Officer ("C.O.") Kusminsky's renewed motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 49).  For the reasons set forth below, this court will recommend granting defendant's motion.

## I.    Background

### A.    Procedural History

Plaintiff David Caldwell, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* 42 U.S.C. § 1983 action on May 22, 2019, in the United States District Court for the Southern District of New York.  (Complaint ("Compl.")) (Dkt. No. 1).  In May 2019, Chief District Judge Colleen McMahon entered an order transferring plaintiff's action to the Northern District of New York, where venue was proper.  (Dkt. No. 3).

Pursuant to Judge McMahon's order, plaintiff's case was transferred to this court.

Plaintiff then moved for leave to proceed in forma pauperis ("IFP"), and Judge McAvoy reviewed the complaint pursuant to 28 U.S.C. §§ 1915, 1915A. (Dkt. Nos. 6, 8). Pursuant to Judge McAvoy's July 2, 2019 order, plaintiff's Eighth Amendment excessive force claim against defendant C.O. Kusminsky ("defendant" or "C.O. Kusminsky") survived initial review, and summons was issued as to him. (Dkt. Nos. 8, 9, 12).

Defendant Kusminsky filed his first motion for summary judgment on September 6, 2019, arguing that plaintiff failed to exhaust his administrative remedies. (Dkt. No. 14). On April 1, 2020, I recommended denying the defendant's motion without prejudice because the parties had not had the opportunity to conduct any discovery regarding the question of whether administrative remedies were available to the juvenile inmate who claimed that he was unaware of the grievance procedure at the correctional facility where the underlying incident occurred. *Caldwell v. Kusminsky*, No. 9;19-CV-673 (TJM/ATB), 2020 WL 6162524, at *6 (N.D.N.Y. Apr. 1, 2020), *report-recommendation adopted*, 2020 WL 6158578 (N.D.N.Y. Oct. 21, 2020). My recommendation was adopted, and discovery proceeded on the exhaustion issue. Plaintiff was deposed on May 13, 2021. (Def.'s Ex. A) (Dkt. No. 49-4).

Defendant filed his renewed motion for summary judgment on August 6, 2021, arguing that the discovery further supports dismissal based on failure to exhaust. (Dkt. No. 49). Despite being given a sua sponte extension by the court, plaintiff has failed to respond to the motion. (Dkt. No. 51).

B.    **Facts**

At all relevant times, plaintiff was an inmate incarcerated in the "JSU"[1] at

Coxsackie Correctional Facility ("Coxsackie").  The complaint alleges that at

approximately 10:00 a.m. on November 1, 2016, C.O. Kusminsky and two other,

unidentified corrections officers removed plaintiff from his cell in order to conduct a

cell search.  (Compl. at 3).  Plaintiff states that after the search, C.O. Kusminsky

"brought out a couple pieces of paper which held [his] raps on [sic] and a couple of

food items." (*Id.*).  Plaintiff "engaged in a conversation with [C.O.] Kusminsky"

regarding the basis for removing plaintiff's property, and debated with him as to

whether the confiscated raps constituted gang material.  (*Id.*).

Consequently, C.O. Kusminsky announced that plaintiff was resisting.  (*Id.*).

Plaintiff disputes that he was resisting, however admits that once the officers grabbed

him "for no reason," he "started resisting."  (*Id.*).  The officers proceeded to use

physical force on plaintiff, and plaintiff alleges that C.O. Kusminsky "punched" him in

the face.  (*Id.*).  Plaintiff also maintains that C.O. Kusminsky performed an improper

"tactical leg grab."  (*Id.*).  Plaintiff claims to have suffered a swollen left jaw and

"busted" eyebrow as a result of the alleged assault.  (*Id.*).  He seeks monetary relief in

the amount of $100,000.00, for physical and emotional damages.  (*Id.*).

## II.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material

fact and, based on the undisputed facts, the moving party is entitled to judgment as a

---

[1] "The 'JSU' is a[n] adolescent SHU [Special Housing Unit] that houses 16 and 17 year olds [sic] with SHU time." (Compl. at 3).

3

matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.  Exhaustion of Administrative Remedies

### A.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil

4

rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)), abrogated on other grounds by *Ross v. Blake*, 578 U.S. 632 (2016).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly

affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id.* § 701.8.  Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Prior to *Ross v. Blake, supra*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640 (2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639).  Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three

6

factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

**B.    Application**

In this case, there is no question that plaintiff failed to exhaust his remedies by bringing a grievance and appealing the denial of that grievance to the CORC. Plaintiff conceded the issue in his complaint and during his deposition. The only question in this case is whether those remedies were "available" to this plaintiff. I recommended denying the defendant's first motion for summary judgment so that the parties could conduct discovery which might resolve the issue.

During plaintiff's deposition, he testified that he did not know whether Coxsackie had a grievance program. (Pl.'s Dep. at 36).[2] Plaintiff stated that he was not "informed," that he did not sign "for a handbook that usually tells you the grievance procedure." (*Id.*) Plaintiff stated that he "didn't sign anything that could prove that a grievance procedure was told to [him]." (*Id.*) Plaintiff also stated that he told the tier hearing officer[3] that he was punched, and plaintiff believed that the hearing officer was then "obligated" to tell plaintiff to "grieve" the incident. (Pl.'s Dep. at 37). Plaintiff

---

[2] Defendant has filed only portions of plaintiff's deposition as Exhibit A. The court will cite to the actual page number of the deposition transcript which appears in the upper right hand corner of the page, rather than citing to the page of the exhibit.

[3] It appears that the incident in question resulted in plaintiff being charged with assaulting an officer, for which he was given a misbehavior report and a subsequent disciplinary hearing. Plaintiff is referring to the officer who presided over his disciplinary hearing.

claimed that, if he had been "told," he would have filed a grievance. Plaintiff testified

that he discovered in 2019 that he should have filed a grievance when he had a

conversation with another inmate who told him that plaintiff could have "sued" for the

"punch," but that he should have filed a grievance. (Pl.'s Dep. at 38).

In *Ross*, the Court provided three potential circumstances in which administrative

remedies would be considered unavailable:

> (1) where the administrative procedure technically exists but
> operates as a "dead end – with officers unable or consistently
> unwilling to provide any relief to aggrieved inmates"; (2)
> where the administrative scheme is "so opaque that it
> becomes, practically speaking, incapable of use"; and (3)
> where prison administrators "thwart inmates from taking
> advantage of a grievance process through machination,
> misrepresentation, or intimidation."

*Lutz v. Francisco*, No. 9:20-CV-240 (GTS/DJS), 2020 WL 9264825, at *4 (quoting

*Ross*, 578 U.S. at 643-44).

Plaintiff does not claim that the facility did not have a grievance procedure, or

that the grievance procedure was a "dead end," or even that the procedure itself was

"opaque." He claims that he was unaware of the grievance procedure because he was

young and no one explained the procedure to him or told him that he should file a

grievance regarding the alleged assault by this defendant. He does not claim the

officers were "unwilling" to inform him of the procedures, merely that they failed to do

so at, what plaintiff believed to be, the appropriate times.

The only relevant exception appears to be the third example cited in *Ross*. While

plaintiff claims that it is the facility officials' fault that he was unaware of the grievance

program, there is no allegation, nor is there any showing, that prison officials affirmatively or misleadingly prevented plaintiff from filing a grievance.  Plaintiff does not claim any sort of intimidation.  In fact, plaintiff claims that he did not even know that he could file a federal suit over the alleged assault until almost three years later when he was so informed by another inmate, who also allegedly told plaintiff that he should have filed a grievance.[4] (Pl.'s Dep. at 38).  Plaintiff's belief that the hearing officer in 2016 should have told plaintiff to file a grievance after plaintiff told the officer that the defendant punched him does not qualify as intimidation, misinformation, or machination.[5]

As stated above, plaintiff testified that he did not ***sign*** for a "handbook that usually tells you the grievance procedure," and he did not "sign [anything] that could prove that a grievance procedure was told to [him]."[6] (*Id.*)  While the defendant has not presented any evidence that plaintiff received the handbook in question, the sections of the NYCRR and DOCCS Directive No. 4040, containing an explanation of the grievance procedure, are available in the facility's law library. (Declaration of Jeffery

---

[4] In his response to defendant's first summary judgment motion, plaintiff states that he discovered that there was a grievance program in 2018, not 2019 as he testified during his deposition. (*Compare* Dkt. No. 20 *with* Pl.'s Dep. at 39). At his deposition, plaintiff testified that, at the time of the incident, he never spoke to any officers about the alleged assault other than the tier hearing officer because "they are all friends." (T. 36-37).  Plaintiff stated that he did not know whether the other sixteen or seventeen year old inmates in his unit would have known about the grievance procedure, so apparently he did not speak to any other inmates about the incident.  Later, plaintiff testified that when he returned to Coxsackie another inmate told him about the grievance procedure. (Pl.'s Dep. at 38).

[5] "Machination" is defined as a scheming or crafty action or artful design intended to accomplish some usually evil end. https://merriam-webster.com/dictionary/machination.

[6] The court notes that plaintiff did not say that he did not receive a handbook.  He was careful to state that he never "signed" anything that could "prove" he received a handbook.

A. Hale, IGP Supervisor at Coxsackie ¶ 4). The written policies and procedures governing the IGP are "widely distributed and readily accessible to inmates." (Declaration of Rachael Seguin, Assistant Director of the IGP for DOCCS ¶ 5). There is no requirement that the plaintiff be specifically told of the grievance procedure or that corrections personnel affirmatively suggest that plaintiff file a grievance. Once defendant has shown that a grievance procedure exists and that plaintiff failed to use it, the burden of production then shifts to the plaintiff, who must show that "other factors rendered a nominally available procedure unavailable as a matter of fact." *Liv v. Lewin*, No. 9:19-CV-61 (BKS/DJS), 2020 WL 95432, at *3 (N.D.N.Y. Jan. 8, 2020) (citing *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)).

In my previous report-recommendation herein, I cited case law, indicating that the plaintiff's age might be a factor in determining the availability of remedies. *Caldwell*, 2020 WL 6162524 at *6 (citing *Lewis v. Mollete*, 752 F. Supp. 2d 233, 241 (N.D.N.Y. 2010) ("[Plaintiff's] age at the time of the incident and his contention that he was never informed of the grievance procedure . . . also weigh in favor of concluding that grievance processes were "unavailable" to plaintiff."); *Molina v. New York*, No. 1:09-CV-467 (MAD/ATB), 2011 WL 6010907, at *4 (N.D.N.Y. Dec. 1, 2011) ("The age of the prisoner and their familiarity with the grievance procedure are relevant in determining whether the grievance process was available to the prisoner.")). However, the plaintiff in *Lewis* was also residing in a mental health facility, and his mental capacity may have contributed to his unawareness of, or inability to utilize, the grievance program. *Lewis*, 752 F. Supp. 2d at 241. In *Molina*, the issue was whether

10

the defendants had the opportunity through "informal procedures" to consider the plaintiff's attempt at grieving his issue, not whether the program was "available" to the plaintiff because of his age. 2011 WL 6010907 at 5-7.  While age may have been a "factor" in the determination of these cases, it was not the only reason that formal exhaustion was excused.

After *Ross*, a plaintiff must show more than mere unawareness of an existing grievance procedure; "he must show that he was unaware **because**, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.'" *Caldwell*, 2020 WL 6162524, at *5 (emphasis added) (citing *Grant v. Kopp,* No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *7 (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019); *see also Porter v. Uhler*, No. 9:17-CV-47 (MAD/TWD), 2019 WL 2479000, at *14 (N.D.N.Y. Feb. 19, 2019) *, report and recommendation adopted,* 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019); *aff'd*, 790 F. App'x 329 (2d Cir. 2020).

Although the Second Circuit has not specifically foreclosed "unawareness" as a basis for unavailability, the majority of district court cases have rejected this theory based on other facts in the record. *Id.* (citing *Briscoe v. D'Agata,* No. 14-CV-7384, 2016 WL 3582121 (S.D.N.Y. June 28, 2016) (no exception where plaintiff, who claimed he was unaware of the grievance procedure, received, signed for, and was familiar with the rule book containing the grievance procedure, and admitted that no one prevented him from reading the rule book, stopped him from filing a grievance, or

refused to give him a grievance form) (listing cases); *Richardson v. Jakubowski,* No. 16-CV-6038, 2019 WL 4674199 (W.D.N.Y. Sept. 25, 2019) (rejecting plaintiff's contention that administrative remedies were unavailable to him because he was not properly advised of the process of filing a grievance, since he had received information on how to file a grievance at the correctional facility where he was previously housed)).

More recently, in *Martinez v. Payne*, No. 3:20-CV-231, 2021 WL 3493616, at *5 (D. Conn. Aug. 7, 2021), the court held that "even if Martinez was not given the handbook and even if I accept that he did not know of the procedure to appeal his SRG designation, courts in this circuit have found in light of the Supreme Court's decision in Ross that grievance procedures are not "unavailable" simply because a plaintiff was unaware of the existence of the procedure." (citing inter alia *Galbreth v. Washington*, No. 14 Civ. 691, 2017 WL 3278921, at *11 (S.D.N.Y. 2017) (noting that post-Ross a plaintiff must show he was unaware "because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation'")) (other citations omitted).

In *Osborn v. Williams,* 792 F. App'x 88, 90 (2d Cir. 2019), the Second Circuit dismissed plaintiff's action for failure to exhaust while recognizing that the issue of whether mental illness can render an administrative remedy unavailable under *Ross* was an open question in this Circuit. In this case, there is no issue of plaintiff's mental capacity, notwithstanding his young age.[7] Plaintiff was convicted for robbery when he

---

[7] Although I noted in my previous report-recommendation that "an inmate-plaintiff's mental capacity, presumably influenced by, among other things, his age, remains a potentially relevant factor when considering the availability of administrative remedies," (citing *Caldwell*, 2020 WL 6162524, at *6), nothing in the plaintiff's deposition testimony revealed that his age, and/or mental capacity

was sixteen years old, and was seventeen at the time of the incident. (Pl.'s Dep. at 43).

He was in the juvenile section of an adult correctional facility, not in a mental health

unit. His deposition demonstrates that he claims nothing other than his youth and

inexperience as an excuse for failing to file a grievance.  Based on *Ross*, and the

additional discovery conducted, this court finds that plaintiff's claim of unawareness of

the grievance program is insufficient to excuse the exhaustion requirement. Thus, this

court finds that plaintiff has raised no question of material fact,[8] and defendant may be

granted summary judgment based on plaintiff's failure to exhaust his administrative

remedies.

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that the defendant C.O. Kusminsky's motion for summary

judgment (Dkt. No. 49) be **GRANTED**, and that the complaint be **DISMISSED IN

ITS ENTIRETY FOR FAILURE TO EXHAUST ADMINISTRATIVE

REMEDIES**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

---

prevented him from filing a grievance.  After *Ross*, it appears that the defendants and/or prison officials must have somehow affirmatively prevented such filing by misleading plaintiff, misinforming plaintiff, or engaging in some affirmative action to prevent plaintiff from filing a grievance.  Their simple failure to personally inform him of the grievance program is insufficient ***under the circumstances of this case***.

    [8] As stated above, plaintiff has failed to respond to the summary judgment motion, after a sua sponte extension of time for plaintiff to respond was granted by the court.  Plaintiff received a warning that uncontested facts could be deemed admitted, both in the defendant's papers (Dkt. No. 49 at 2), and from the Clerk (Dkt. No. 50 at 2).

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: February 7, 2022

Andrew T. Baxter
U.S. Magistrate Judge

14